Filed 10/6/14  In re Sarah V. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re SARAH V., a Person Coming Under the Juvenile Court Law. | B250988 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK64286) |
| Plaintiff and Respondent, | |
| v. | |
| SALVADOR V. (FATHER) et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. D. Zeke Zeidler, Judge.  Dismissed.

Sherman & Associates and Beatrice K. Fung for Appellant, Maria V.

Jamie A. Moran, under appointment by the Court of Appeal, for Appellant Salvador V.

Andrea Renee St. Julian, for Minor Sarah V.

No appearance by Respondent Los Angeles Department of Children and Family Services.

_____

Salvador V. (father) and Maria V. (paternal aunt) appeal from the order denying paternal aunt's Welfare and Institutions Code section 388 petition to change Sarah V.'s placement from a nonrelated extended family member to the paternal aunt.[1] We dismiss the appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Sarah V. tested positive for opiates when she was born in September 2012. Although mother tested negative, she had a history of drug abuse which caused her to lose parental rights to Sarah V.'s two half-siblings: six-year-old Erin R. and five-year-old Aden R. Father tested positive for marijuana and methamphetamines.

The Department of Children and Family Services (DCFS) did not immediately detain Sarah V. because of the possibility that morphine administered to mother during her C-section caused Sarah V.'s positive toxicology. The plan was for the family to live with maternal grandmother in Corona. But mother left one-week-old Sarah V. with maternal grandmother so that she could be with father, who did not want to live in Corona. That same day, mother left a voice mail message asking the social worker about placing Sarah V. for adoption. By the time mother spoke to the social worker the next day, she had changed her mind about adoption. Mother admitted using methamphetamines over the weekend and agreed to have Sarah V. removed from her custody.

Father was found to be a presumed father. As sustained in October 2012, the section 300 petition alleged Sarah V. was a person described by section 300, subdivision (b) because mother and father had substance abuse problems that rendered them incapable of caring for Sarah V. Neither parent appeared at the adjudication hearing. Reunification services were ordered for father, but not mother because of her failure to reunify with the half-siblings.

---

[1]     All future undesignated statutory references are to the Welfare and Institutions Code.

Father told the social worker that he wanted Sarah V. placed with his family.[2] But father never told his family about Sarah V.'s birth or the dependency proceedings and the only contact information he provided for his family was the telephone number of his elderly and disabled parents, who did not always answer the phone. As a result, the social worker was unable to contact the paternal family about placing Sarah V. with them. On September 19, 2012, Sarah V. was placed with nonrelative extended family member Esther A. Esther A. was the sister of half-sibling Aden's father and therefore not related by blood to Sarah V. but she had previously adopted Aden and was interested in adopting Sarah V., too. In late January 2013, father told his family about Sarah V. and on February 5, 2013, appellant paternal aunt contacted DCFS to ask that Sarah V. be placed with her. By that time, Sarah V. had been living with Esther A. for almost five months. DCFS started the approval process for paternal aunt's home and arranged weekly three hour visits for her and Sarah V.

By the six-month review hearing on April 8, 2013, Sarah V. was thriving in Esther A.'s care. Father had failed to participate in any court-ordered programs, including drug testing, and DCFS recommended terminating his reunification services. Approval of paternal aunt's home was still pending, but she had been consistently visiting Sarah V. and the visits were going well. The juvenile court continued the matter to May 13, for a contested section 366.21, subdivision (e) hearing (.21(e) hearing).[3]

---

[2] Mother, who is not a party to the appeal, wanted Sarah placed with either maternal grandmother or a maternal aunt, but neither was willing to be a long term caretaker.

[3] At the six-month review hearing, section 366.21, subdivision (e) requires the juvenile court to return the child to the parents unless it finds, by a preponderance of the evidence, that return "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . . The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." If the child is not returned to the parents, the juvenile court must decide whether reunification services should be terminated. (*Ibid.*)

In late April 2013, paternal aunt's home was approved. On May 9, she filed a section 388 petition seeking to have Sarah V. placed with her. She argued that Sarah V.'s best interests would be served by the change in placement because it would allow Sarah V. to have a relationship with her paternal family, including numerous aunts and uncles, cousins and half-siblings. Paternal aunt stated her intention to facilitate a continued relationship with Sarah V.'s half-brother, Aden R., and the current care-taker, Esther A. The hearing on the section 388 petition was set for the day of the .21(e) hearing. In its report for the continued .21(e) hearing, DCFS observed that Sarah V. had developed a bond with paternal aunt. Notwithstanding the strong bond Sarah V. also had with Esther A., DCFS concluded it would be in Sarah V.'s best interest to be placed with paternal aunt, a member of Sarah V.'s biological family. The section 388 petition and the .21(e) hearing were continued to May 29.

For the continued .21(e) hearing, DCFS reported that Sarah V. was thriving in her placement with Esther A., who still wanted to adopt. DCFS continued to recommend placement with paternal aunt, termination of father's reunification services, and setting of a section 366.26 permanent plan hearing (.26 hearing). On May 29, Esther A. and her husband, Armando A., were granted de facto parent status. At paternal aunt's request, the section 388 hearing was continued to July 22, so that her counsel could review the declarations filed in connection with the de facto parent motion as to its relevance to the section 388 petition. But it denied paternal aunt's request to continue the .21(e) hearing to the same date as the hearing on her section 388 petition.[4] Going forward with the .21(e) hearing, the juvenile court terminated father's reunification services and set the

---

[4]    Appellants argue that on May 29, the juvenile court reserved consideration of Sarah V.'s placement until July 22. We believe the Reporter's Transcript of May 29 makes clear that the juvenile court denied paternal aunt's request to continue the .21(e) hearing and instead made all placement findings required by section 366.21(e). On that date, the juvenile court continued to July 22 only the hearing on the section 388 seeking a *change* in placement.

matter for a .26 hearing on September 26. Father did not seek review of the order terminating his reunification services.

At the section 388 petition hearing on July 22, paternal aunt argued her becoming aware of the dependency proceedings, the bond she had developed with Sarah V., and the ASFA approval of her home constituted the requisite change of circumstances. She further argued that, as a family member, she had preferential status under section 361.3, subdivision (c)(2) (§ 361.3(c)(2)) and that Sarah V.'s best interests would be served by placing her with a biological family member. Father agreed with paternal aunt but Sarah V.'s counsel opposed any change in placement. The juvenile court observed that section 361.3(c)(2) was inapplicable inasmuch as family reunification services had already been terminated. Although it found a change of circumstances, the court denied the petition, finding it would not be in Sarah V.'s best interests to remove her from the only home she had ever known. Father and paternal aunt each timely appealed from the order denying paternal aunt's section 388 petition.

Father's parental rights were terminated on December 19, and father has not appealed from that order, which became final on February 17, 2014. (Cal. Rules of Court, rule 8.406(a)(1).). Four months later, on June 9, Sarah V.'s adoption by Esther A. was finalized.

### DISCUSSION

A. *The Motions to Dismiss*

Sarah V. has filed two motions to dismiss the appeals: (1) on May 15, 2014, after father's parental rights were terminated, but before the adoption was finalized, Sarah V. moved to dismiss father's appeal on the ground that he lacked standing as a result of the termination of his parental rights; and (2) on June 25, 2014, after the adoption was finalized, Sarah V. moved to dismiss both appeals on the ground that the finalized adoption rendered the appeals moot. Father and paternal aunt counter that the notices of

5

appeal were filed before father's parental rights were terminated and the adoption finalized. We conclude that father lacks standing and, further, the appeals are moot.

A.      Father Lacks Standing

Our Supreme Court recently announced the following rule: "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*In re K.C.* (2011) 52 Cal.4th 231, 238 (*K.C.*).) In *K.C., supra*, the two-month-old K.C. was placed with a parent who wanted to adopt him. In separate proceedings, parental rights to his five older siblings were terminated and they were placed with the paternal grandparents. The agency denied the grandparents' request to have K.C. placed with them. The grandparents' section 388 petition and the .26 hearing were scheduled for the same day. The father appeared at the hearings and supported the grandparents' petition, but he did not offer any argument in opposition to termination of his parental rights. The juvenile court denied the section 388 petition and terminated the father's parental rights. The father appealed from the denial of the petition, but not from termination of his parental rights. Our Supreme Court concluded the father did *not* have standing to appeal denial of the petition because he did not contest the termination of his parental rights. It found a perfunctory statement that if the placement order were reversed the termination order should also be reversed was not sufficient to confer standing. (*Id*. at p. 238, fn. 4.)

The *K.C.* court distinguished *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, in which the mother was found to have standing to appeal denial of her section 388 petition seeking to have the child placed with a maternal great-uncle. In *Esperanza*, the mother and child filed a section 388 petition seeking to have the child placed with the maternal great-uncle. The juvenile court dismissed the petition, finding it did not have authority to review the agency's determination that the uncle's prior conviction for violating Penal Code section 272 [contributing to the delinquency of a minor] was "nonexemptible" within the meaning of section 361.4, subdivision (d)(2), which precludes placing

6

dependent child in the home of a person convicted of certain crimes, unless the agency has granted an exemption. (*Esperanza,* at p. 1057.) A few months later, the mother's parental rights were terminated. (*Id.* at p. 1052.) On appeal from the order dismissing their section 388 petition, mother and Esperanza argued that reversal of that order necessitated reversal of the judgment terminating parental rights. (*Id.* at p. 1061.) The appellate court agreed. It found Esperanza had standing because she had a legally cognizable interest in placement with a relative. (*Id.* at p. 1053.) The mother had standing because the requested change in placement might have affected the subsequent decision whether to terminate her parental rights: "[P]lacement of a child with a relative has the potential to alter the juvenile court's determination of the child's best interests and the appropriate permanency plan for that child, and may affect a parent's interest in his or her legal status with respect to the child. [Citations.] While an alternative permanency plan to adoption may be unlikely on this record, it remains a statutory option for the juvenile court. We resolve doubts in favor of [the mother's] right to appeal. [Citation.]" (*Id.* at p. 1054.) The *Esperanza* court reversed the orders dismissing the petition and terminating parental rights. (*Id.* at pp. 1061-1062.)

Distinguishing *Esperanza*, the court in *K.C.* explained that the *Esperanza* mother had standing because there existed a possibility that reversing the placement order might lead the juvenile court to not terminate parental rights whereas in *K.C.*, there was no such possibility inasmuch as the father had not challenged the termination order.

Because father has not challenged the termination order in this case, it is analogous to *K.C.*, not *Esperanza*. Like the father in *K.C.* and unlike the mother in *Esperanza*, father in this case did not appeal from the termination of his parental rights. Reversal of the order denying the section 388 petition (i.e. placing Sarah V. with paternal aunt) would not advance any argument against terminating father's parental rights since father makes no such argument. (*K.C., supra,* 52 Cal.4th at p. 238.) Father's assertion that he "faces the prospect of losing his ability to have any relationship at all if Sarah V. remains with the foster parents, rather than being placed with her own family in the home of the paternal aunt," is not a challenge to the termination order and is insufficient to

7

confer standing on father. Accordingly, under *K.C.*, father lacks standing to challenge the order denying paternal aunt's section 388 petition.

      B.     <u>The Appeals Are Moot</u>

Even if father has standing to appeal the denial of paternal aunt's section 388 petition, we find both appeals are moot as a result of the finalized adoption.

An appeal becomes moot when the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. If the purported error affects the outcome of subsequent proceedings, the issue is not moot. (*In re E.T.* (2013) 217 Cal.App.4th 426, 436.) Whether subsequent events in a juvenile dependency matter make a case moot, and whether our decision would affect the outcome in a subsequent proceeding, is decided on a case-by-case basis. (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498.)

With certain exceptions, the filing of an appeal deprives the trial court of jurisdiction of the cause and vests jurisdiction in the appellate court. (Code Civ. Proc., § 916, subd. (a).) But during the pendency of an appeal from an order that affects the custody of a dependent child, the juvenile court retains jurisdiction to make subsequent orders and findings in the dependency proceedings. (Code Civ. Proc., § 917.7; *In re Anna S.*, *supra*, 180 Cal.App.4th at pp. 1493, 1499.) "However, the trial court may in its discretion stay execution of these provisions pending review on appeal or for any other period or periods that it may deem appropriate." (Code Civ. Proc., § 917.7.) Nothing in the record on appeal suggests that father or paternal aunt sought a stay of the termination or adoption orders pending the results of this appeal.

On the question of whether the finalized adoption renders the appeals moot in this case, we take guidance from three cases: *Esperanza, supra*, 165 Cal.App.4th at pages 1054-1055, in which the court found the appeal *not* moot; and *In re Albert G.* (2003) 113 Cal.App.4th 132 (*Albert G.*) and *In re Jessica K.* (2000) 79 Cal.App.4th 1313 (Jessica K.), in which the courts found the appeals moot.

8

In the earliest of those three case, *Jessica K.*, the mother filed a section 388 petition seeking to have Jessica returned to her care five months after her reunification services were terminated. The juvenile denied the petition. It subsequently terminated mother's parental rights and ordered Jessica placed for adoption. On the same day parental rights were terminated, the mother filed an appeal from the order denying the section 388 petition, but not from the order terminating her parental rights, which became final. (*Jessica K.*, *supra,* 79 Cal.App.4th at p. 1315.) The appellate court dismissed the appeal as moot, reasoning that an order terminating parental rights may be modified only by direct appeal; since the mother did not appeal from the order terminating her parental rights, even if the denial of the section 388 petition was erroneous, the court could not afford the mother any relief. (*Id*. at p. 1316.) The court observed that mother could have pursued a petition for an extraordinary writ as to the summary denial of her section 388 petition, filed prior to the date scheduled for the parental rights termination hearing, asserting that appeal was not an adequate remedy. (*Id*. at p. 1317.)

In the next case, *Albert G., supra*, one-month-old Albert's two older brothers were in foster care in Hawaii when Albert was placed with a maternal aunt in California. A few months later, the brothers were also placed with the aunt. More than seven years after that, the aunt sought DCFS's assistance in finding a new place for the family to live after the maternal grandparents, with whom they had been living, asked them to leave. Over the aunt's protests, the two older brothers were returned to foster care in Hawaii and Albert was placed in foster care in California. Although the aunt eventually was able to adopt the two older boys in Hawaii, her reunification with Albert was derailed by negative reports about her relationship with the maternal grandparents. Albert was placed with his paternal grandparents. Over the course of the dependency, the aunt filed section 388 petitions, as well as a motion for de facto parent status, which were all denied; she did not appeal from those orders. (*Albert G.*, *supra*, 113 Cal.App.4th at p. 135.) The paternal grandparents adopted Albert in July 2002. In August 2002, the aunt filed a section 388 petition, which the juvenile court denied for the reason, among others, that its jurisdiction was terminated by the adoption. The appellate court granted

9

DCFS's motion to dismiss the aunt's appeal from that order as moot, reasoning: "Albert's adoption by his paternal grandparents was final before this appeal was filed, and indeed before the section 388 petition was filed. Albert's adoption meant the trial court could not grant the change appellant sought in her petition, and also means that there is no remedy we could grant on appeal. 'After adoption, the adopted child and the adoptive parents shall sustain towards each other the legal relationship of parent and child and have all the rights and are subject to all the duties of that relationship.' (Fam. Code, § 8616.) Albert cannot be removed from his adoptive parents on a section 388 petition. Instead, like every other child, he could only be removed under the procedures and with the showings required by section 300. [¶] The trial court had no authority to grant the petition and return Albert to appellant. There is no possibility of effective relief on appeal. The matter is moot." (*Albert G.*, at p. 135.)

At issue in *Esperanza*, the most recent of the three cases, was whether termination of parental rights and placement of the child in a prospective adoptive home rendered appeal from the dismissal of the mother and child's section 388 petition moot. The court held it did not, reasoning that determination that the juvenile court had authority to review the agency's denial of a criminal records exemption, and to direct the agency to consider the request for an exemption under the appropriate legal standard, might result in the agency granting an exception, which in turn might result in a different placement order. (*Esperanza*, *supra*, 165 Cal.App.4th at p. 1055.) Accordingly, both the order dismissing the petition and the order terminating the mother's parental rights were reversed. (*Id*. at pp. 1061-1062.) The *Esperanza* court did not discuss either *Jessica K.* or *Albert G.*

We conclude that this case is more similar to *Jessica K.* and *Albert G.* than it is to *Esperanza.* Like the mother in *Jessica K.*, even if the denial of the section 388 petition was error, the juvenile court could not afford father any relief since he did not appeal from the order terminating his parental rights. The fact that father filed his notice of appeal before his parental rights were terminated and the adoption finalized is of no legal significance. In *Jessica K.*, it was the mother's failure to appeal from the order

10

terminating her parental rights that rendered the appeal from the denial of her section 388 petition moot, not the fact that the notice of appeal was filed on the same day as the termination order. Here, as in *Jessica K.*, father's failure to appeal from the order terminating his parental rights renders his appeal from the denial of the section 388 petition moot because there is no relief to be granted father.

Regarding paternal aunt, like the finalized adoption in *Albert G.*, Sarah V.'s finalized adoption by Esther A. renders this appeal moot. Under *Albert G.*, Sarah V. can only be removed from her adoptive home with the showings required by section 300. (*Albert G., supra,* 113 Cal.App.4th at p. 135.) As with father, the fact that paternal aunt's appeal was filed before the adoption was finalized is of no consequence. Paternal aunt could have averted this problem by requesting the juvenile court to stay adoption proceedings pending her appeal. (Code Civ. Proc., § 917.7.) If the juvenile court refused, she could have petitioned this court for a writ of supersedeas pending appeal. (Cf. *In re M.M.* (2007) 154 Cal.App.4th 897, 916 [appellate court had no jurisdiction to consider the minor's appeal from order transferring his dependency case to Indian tribe pursuant to ICWA; the loss of jurisdiction could have been averted had the minor requested a stay pending exhaustion of his appellate rights].) Paternal aunt did neither and, as a result, subsequent events in the dependency case rendered her appeal moot.

## DISPOSITION

We dismiss father's appeal for lack of standing and, alternatively, as moot. We dismiss paternal aunt's appeal as moot.


                                              RUBIN, J.
WE CONCUR:



        BIGELOW, P. J.                              GRIMES, J.


11